## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

In re:  **HALLMARK HOME BUILDERS, INC.,**            **Case No.  14-34137 KLP**
                        **Debtor.**                           **Chapter 11**

### DEBTOR'S SIXTH MOTION FOR ORDER
### APPROVING PRIVATE SALE OF REAL PROPERTY

COMES NOW Hallmark Home Builders, Inc. ("Debtor"), debtor and debtor-in-possession, and files this sixth motion (the "Motion") pursuant to Bankruptcy Code § 363, and Federal Rule of Bankruptcy Procedures 2002, 4001(a)(3), 6004 and 9014, for entry of an order approving private sale of a certain parcel of real property commonly known as 10000 Shifflett Court, Glen Allen, Virginia, free and clear of all liens, claims, encumbrances, and interests; with county taxes to be paid at closing; and remaining liens, claims, encumbrances, and interests attaching to sale proceeds; and in support thereof respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(2) & 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 & 1409.

### Facts

2.      Debtor is a Virginia corporation that has built a significant number of homes in the greater Richmond area.

Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998
Telephone 804. 648.1636
Counsel for Hallmark Home Builders, Inc.

3.      On August 1, 2014 (the "Petition Date"), Debtor filed a voluntary Chapter 11 bankruptcy petition.

4.      Debtor is acting as debtor-in-possession and no committees have been appointed.

5.      As of the Petition Date, Debtor owned several pieces of real property, including a piece of property commonly known as 10000 Shifflett Court, Glen Allen, Virginia, and more particularly described in Exhibit B (the "Property").

6.      On September 12, 2014, the Court entered an order authorizing Debtor to employ Long & Foster Realtors as its real estate broker.  Under the terms of the *CVRMLS Residential Listing Agreement*, Debtor will pay Long & Foster Realtors a real estate broker's commission of six percent (6%) of the gross sale price of the property, from which Long & Foster Realtors may share one-half of such commission (*i.e.*, three percent (3%) of the gross sale price of the property) with other introducing brokers.

7.      Subject to approval of the Bankruptcy Court and purchaser obtaining a VHDA loan at the prevailing rate of interest at the time of settlement, Adrienne Bowman has offered to purchase the Property for $194,000, with Debtor to credit purchaser $5,000 at settlement towards purchaser's closing costs, prepaids, discount points, etc.  A true and accurate copy of the *Purchase Agreement* by and between Debtor (as seller) and Adrienne Bowman (as purchaser), dated January 29, 2015, is attached as Exhibit A.

8.      The Property is encumbered by a Deed of Trust held by Union First Market Bank (the "Bank").  The consent of the Bank to the sale has been requested, with the Bank to receive the net proceeds of sale.  The Bank's consent is currently pending.

9.      All sales of the Property shall be free and clear of all liens, claims, encumbrances, and interests in the Property, with county taxes to be paid at closing, and remaining liens, claims, encumbrances, and interests will attach to the sale proceeds.

10.      Debtor believes the sale is in the best interest of the Debtor, the bankruptcy estate, the Bank, and unsecured creditors.

11.      Debtor prays this Court enter an Order waiving the fourteen (14) day stay in Federal Rule of Bankruptcy Procedure 6004(h), to allow the parties to proceed immediately upon entry of an order.

**WHEREFORE**, the Debtor prays this Court enter an Order sustantially in the form of Exhibit B, and granting such further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of February, 2015.

HALLMARK HOME BUILDERS, INC.
By Counsel

/s/ John C. Smith
Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
SANDS ANDERSON PC
P.O. Box 1998
Richmond, VA 23218-1998
Telephone: 804.648.1636
Counsel for Hallmark Home Builders, Inc.

W2916568





## Central Virginia Regional MLS
## Purchase Agreement

This is a legally binding document for the purchase of real property. If not understood, seek competent advice before signing.
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement is dated ___Jan  29th_, 2015_, between _____Adrienne Bowman_____
_____ ("Purchaser") and _____Hallmark Homes Builders_____
_____ ("Seller"). The parties acknowledge that ____Long & Foster REALTORS____ ("Listing Broker") represents Seller, and ____Base Camp Realty of Richmond____ ("Selling Broker") represents Purchaser.

**\* 1. REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of _____Henrico_____, Virginia.
Lot _38_ Block ____Section ____ of ____Lees Crossing_____ Subdivision
Tax Parcel # _____783-766-1117_____ Other _____
and more commonly known as: _10000 Shifflett CT_____
together with the items of personal property described in paragraph 2 (the "Property").

**\*2. PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at the time of signing this Agreement, unless otherwise noted) are the shades, plantation shutters, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall to wall carpeting, garbage disposal, built-in range, built-in oven, built-in dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and remotes, mailbox and post, outbuildings and sheds, gas logs, fireplace inserts and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the Property. Also included are the following items:
Washer- Dryer combo Refrigerator- ~~Oven~~  *HH*  *AB*

**\*3. ADDENDA:** The following addenda are made a part of this Agreement:

☐ Lead-Based Paint Disclosure *HH* ~~required on all pre-1978 homes~~ ☐ Right of First Refusal ☐ Short Sale Addendum
☐ Disclosure of Brokerage Relationship to Unrepresented Party(ies) ☐ Other _____

**\*4. PURCHASE PRICE:** The Purchase Price of the Property is $194,000 ~~One Hundred Ninety-Nine Thousand and Nine Hundred and Fifty Dollars~~ ____One Hundred Ninety Thousand____ Dollars ($ ~~190,000.00~~ ), which shall be paid to Seller at settlement, subject to the pro-rations described herein and/or from the following sources [check all applicable box(es)]:
~~$199,950.00~~ $194,000 *AB* *HH*

☐ This sale is **not** subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.

☒ This sale **is** subject to financing. This is subject to Purchaser being able to obtain or assume a **[select loan type]:**
☐ Conventional; ☐ FHA; ☐ VA; ☒ VHDA or ☐ _____ loan in an amount not less than ____% of the Purchase Price **OR** $_____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a **[select one box]:**
☐ fixed rate not exceeding ____% per year **OR**
☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ___% during the term of the loan **OR**
☒ at the prevailing rate of interest at the time of settlement.

This loan shall be amortized over a term of ___ years and shall require not more than a total of ____ discount and origination points. (If this Agreement provides for the assumption of a loan, the parties acknowledge that the balance set forth above is approximate and that the principal amount to be assumed will be the outstanding principal balance on the date of settlement, and Purchaser shall assume all obligations of Seller under such loan with the exception of past due charges for which the Seller shall be liable). Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement.

☒ Other financing terms: _Seller to pay $5000.00 of purchasers closing costs-prepaids-disc points. etc_.

CVRMLS Form 8298 LtrRev. 6/12                    Page 1 of 8

EXHIBIT A

Authentisign ID: 88658BB4-0F8D-46DD-B262-935467385AA8  Case 14-34137-KLP  Doc 81  Filed 02/02/15  Entered 02/02/15 13:12:33  Desc Main

Authentisign ID: 6005670B4F5D6B-46DD-6261-905620F032A  Document  Page 5 of 14

*This sale [select one]: ☒ is  OR  ☐ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser). If the Purchase Price exceeds the appraised value, Purchaser shall either: (i) may proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price. If the parties are unable to agree upon a Purchase Price, then Purchaser may terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

**5. FINANCING:** If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after this Agreement is fully executed by the parties and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on the settlement date set forth in Paragraph 7. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 4, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after this Agreement is fully executed by the parties that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the settlement date, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to disclose to Seller's real estate licensee information about the progress of the loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

*6. DEPOSIT: Purchaser shall make a deposit of $___500.00___ to be held by _____Base Camp Realty_____ (the "Escrow Agent") in the form of: ☒ check  ☐ cash  ☐ other _____ (the "Deposit"). Purchaser [select one]: ☒ has paid the Deposit to the Escrow Agent OR ☐ will pay the Deposit to the Escrow Agent within _____ days after this Agreement is fully executed by the parties. If Purchaser fails to pay the Deposit as set forth herein, then Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. The Deposit may be held in an interest bearing account. The parties waive any claim to interest resulting from such Deposit. The escrow account shall conform to the Virginia Real Estate Board Regulations, and the deposit shall not be released by the Escrow Agent until (i) Seller and Purchaser have agreed in writing as to its disposition, (ii) a court of competent jurisdiction orders a disbursement of the funds, or (iii) the Escrow Agent can pay the funds to the party in the transaction who is entitled to receive them in accordance with clear and explicit terms of the Agreement which established the deposit. If option (iii) is selected, then, prior to the disbursement, the Escrow Agent shall give written notice to the party to the transaction not to receive the deposit, by hand delivery receipted for by the addressee or by certified mail, return receipt requested, that this payment will be made unless a written protest from such party is received by the Escrow Agent within 30 days of the delivery or mailing of the notice. If the notice is sent within 90 days of the date of nonconsummation, the Escrow Agent may send the notice by receiptable e-mail or facsimile if such email address or facsimile information is set forth herein or provided by the recipient.

*7. SETTLEMENT; POSSESSION: Settlement shall be made at the offices of _____ on or before [select one box and insert closing date]:
☒ _____March_____ ___31st___, 20_15___, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement.
OR
☐ _____, 20___, and subject to Seller's right to cure any title defects as set forth in Paragraph 22B, if settlement does not occur within ten (10) days following such date, a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject

CVRMLS Form 8298 LtrRev. 6/12        Page 2 of 8

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties. Seller and Purchaser authorize and direct the settlement agent to provide a unified copy of the HUD-1 Settlement Statement for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker. Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above.

**\*8. OCCUPANCY DISCLOSURE:** Purchaser intends to ☒ occupy ☐ not occupy the Property as a principal residence.

**\*9. RESIDENTIAL PROPERTY DISCLOSURE:** Seller represents that the Property **[select one]:** ☒ is ☐ is not subject to the Virginia Residential Property Disclosure Act, Sections 55-517 et. seq. of the Code of Virginia, which requires the Seller of certain residential property to furnish the Purchaser with a Residential Property Disclosure Statement. Property Disclosure **[select one]** ☒ is ☐ is not attached. (Attachment does not become part of this Agreement.)

**10. FAIR HOUSING DISCLOSURE:** All offers shall be presented and considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.

**\*11. PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property **[select one]:** ☒ is ☐ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-508 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered or delivered by electronic means and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection H of Section 55-509.6 or subsection B of Section 55-509.7 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

**\*12. CONDOMINIUM DISCLOSURE:** The Seller represents that the Property **[select one]:** ☐ is ☐ is not a condominium resale, which is subject to the Virginia Condominium Act (Section 55-79.39 et seq. of the Code of Virginia) (the "Condominium Act"). If the Property is a condominium resale, the Condominium Act requires the Seller to obtain from the unit owners' association a resale certificate and provide it to the Purchaser or purchaser's authorized agent. The information contained in the resale certificate shall be current as of the specified date on the resale certificate. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the resale certificate; (b) within 3 days after receiving the resale certificate if the resale certificate is hand delivered or delivered by electronic means and a receipt obtained; or (c) within 6 days after the postmark date if the resale certificate is sent to the Purchaser by United States mail. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i)

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for the delivery of the resale certificate to Purchaser or Purchaser's authorized agent. The right to receive the resale certificate and to cancel this Agreement terminates at settlement. If the Purchaser has received the resale certificate, the Purchaser has a right, at Purchaser's sole expense, to request from the unit owners' association a resale certificate update or financial update in accordance with Section 55-79.97:1. A request for an updated resale certificate does not extend the cancellation periods set forth above.

**13. MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lienor last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

**\*14. PROPERTY INSPECTION [select one]:**
☐ Purchaser waives a property inspection of the Property.
**OR**
☒ Seller hereby grants to Purchaser the right to have the Property inspected by firm(s) selected by the Purchaser at Purchaser's expense and to request repair and/or repair credit of defects revealed .Inspections may include, but are not limited to, all structural and building components and systems, radon gas, underground storage tanks, soil condition, environmental testing and engineering studies. The term "defects" as used in this paragraph shall mean (i) a condition which impairs the normal stability, safety or use of any improvements (buildings) on the Property, or (ii) damage to any part of the improvements, but shall exclude any cosmetic flaws, antiquated systems or grandfathered components that are in working order but would not comply with current building code if constructed or installed today.

10 days  *HH* *NB*

Purchaser shall provide Seller with an inspection report, cost of repairs and a written request for repair and/or repair credit of such defects NO LATER THAN: **[select one]:** ☒ ~~14~~ days after this Agreement is fully executed by the parties **OR** ☐ _____ (Time) on _____ (Date). If no box is checked, the parties agree that Purchaser shall provide Seller with an inspection report, cost of repairs and a written request for repair and/or repair credit for such defects no later than ten (10) days after this Agreement is fully executed by the parties. If Purchaser has not submitted the inspection report, cost of repairs and a written request for repair and/or repair credit for such defects to Seller by said date, then Purchaser waives the right to request repairs and/or a repair credit, agrees that the present condition of the Property is satisfactory, and will proceed to Settlement in accordance with the Purchase Agreement. Seller shall respond in writing to Purchaser's repair request within seven (7) days of its receipt (the "Negotiation Period"). If Seller agrees in writing to accept such request, then the parties shall proceed to settlement. If Seller does not respond in writing within the Negotiation Period, then Seller shall be deemed to have rejected Purchaser's repair request.

At any time during the Negotiation Period, (i) Purchaser shall have the right to accept in writing Seller's currently offered repairs and/or repair credit and the parties shall proceed to settlement, and (ii) Seller shall have the right to agree in writing to make the repairs and/or repair credit then requested by Purchaser and the parties shall proceed to settlement. No party may unilaterally terminate this Agreement during the Negotiation Period, provided however, if, by 5:00 p.m. on the seventh (7th) day of the Negotiation Period, no final agreement is reached as to the repairs, Purchaser shall have until 5:00 p.m. on the second day after the end of the Negotiation Period to either: (i) terminate this Agreement by written notice to Seller, or (ii) accept in writing Seller's last offered repairs and/or repair credit and proceed to settlement. If Purchaser terminates this Agreement or fails to notify Seller of its election within the said two (2) day period, then this Agreement shall terminate, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

CVRMLS Form 8298 LtrRev. 6/12                    Page 4 of 8



All repairs pursuant to this Paragraph 14 shall be made in a workmanlike manner. Seller shall have all utilities supplied to all systems prior to the inspection. If Seller fails to have all utilities supplied to all systems prior to Purchaser's inspection, then the expiration of the inspection period set forth above shall be extended until ten (10) days following the date that Purchaser is notified by Seller that all utilities have been supplied to all systems. Purchaser and Seller, their heirs, and assigns, hereby jointly and severally release and forever discharge the Listing and Selling Brokers and its real estate licensees in this transaction, from any and all liabilities, obligations, causes or action, claims and demands whatsoever arising out of or in any way connected with any or all work performed, materials furnished or inspections performed in connection with the captioned Property by contractors, suppliers or inspectors hired by them on behalf of the parties of this Agreement. Purchaser and Seller acknowledge that the provisions of this Paragraph 14 are in addition to treatments or repairs made pursuant to Paragraphs 22E, 22F and 22G.

**15. DEFAULT:** If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 17 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

**16. Choice of Settlement Agent:** Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia provides that the purchaser or borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.

**Variation by agreement:** The provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.

**Escrow, closing, and settlement service guidelines:** The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from his settlement agent, upon request, in accordance with the provisions of Chapter 27.3 (§ 55-525.16 et seq.) of Title 55 of the Code of Virginia.

**\*17. BROKERAGE FEE:** Selling Broker is to be paid a fee of __3__ % of the gross sales price **OR** $_____ by Seller or by _____. Listing Broker is to be paid the fee stated in the Listing Agreement executed by Seller, less any amount due Selling Broker. Seller hereby authorizes and directs the settlement agent to disburse to the Listing Broker and the Selling Broker from Seller's proceeds the respective brokerage fees at settlement.

**\*18. HOME WARRANTY INSURANCE:** Purchaser has been advised of the availability of a one year warranty program and ☐ declines coverage **OR** ☒ elects to purchase the home warranty program. The cost of the _____HMS_____ home warranty program is $___500.00___ and is to be paid by ☐ Purchaser **OR** ☒ Seller at settlement. The parties acknowledge that Listing and/or Selling Brokers and their respective licensees may receive a fee for each home warranty sold.

**19. RELATED BUSINESS AND SERVICES:** The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and services from which they receive compensation during the course of this transaction, in addition to the real estate brokerage fees.

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central
Virginia Regional MLS.



**20. PURCHASER DISCLOSURE:** Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

**\*21. ADDITIONAL TERMS:**
seller to install new carpet throughout home with a 6lb pad( color to be agreed upon between seller and purchaser)
~~seller to replace the windows with failed seals in misc. areas~~ *JH* *AB*
throughout house( to be determined by home inspector)
Seller to finish painting and replacing trim , mirrors etc.

Listing agent is related to seller.
Fireplace, chimney, and flue sold "as is"
Third party bankruptcy court approval required   *AB*   *JH*

**22. STANDARD PROVISIONS:**

**A. EXPENSE PRORATIONS:** Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement.

**B. TITLE:** At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive covenants and utility easements of record which do not materially and adversely affect the use of the Property for residential purposes or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto. In the event this sale is subject to a financing contingency under Paragraph 4, the access to a public road must be acceptable to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within sixty (60) days after Seller receives notice of the defect, then either party may terminate this Agreement at the expiration of such sixty (60) day period by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 7 shall be extended if necessary to enable Seller to cure any title defect, but not for more than sixty (60) days, time being of the essence.

**C. LAND USE ASSESSMENT:** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

**D. RISK OF LOSS:** All risk of loss or damage to the Property by fire, windstorm, casualty or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policies of insurance applicable to the Property.

**E. EQUIPMENT CONDITION AND INSPECTION:** Purchaser agrees to accept the Property at settlement in its physical condition at the time this Agreement is fully executed by all parties, except as otherwise provided herein. Seller warrants that all appliances, heating and cooling equipment, plumbing systems and electrical systems will be in working order at the time of Settlement or at Purchaser's occupancy, whichever occurs first. Seller agrees to deliver the Property in broom-clean condition and to exercise reasonable and ordinary care in the maintenance and upkeep of the Property between the date this Agreement is executed by Seller and Settlement or at Purchaser's occupancy, whichever occurs first. Seller grants to Purchaser or his representatives the right to make a pre-occupancy or pre-settlement inspection to verify that the condition of the Property conforms to this Agreement and to ensure that repairs, if any, have been completed.

**F. WELL AND SEPTIC:** If the Property is served by an on-site well and/or sewage disposal systems, Seller agrees to furnish Purchaser with certificate dated not more than 30 days prior to settlement from the appropriate governmental authority or from a licensed and insured private company, indicating that the well water is free from contamination by coliform bacteria and that there is no evidence of malfunction of the sewage disposal system. If Purchaser obtains a FHA/VA loan, the well

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



water shall also be tested by Seller and certified as being free from lead contamination. If contamination and/or malfunctions are found, Seller shall repair all malfunctions and correct the contamination at Seller's expense. Subject to the limitation set forth in Paragraph H below, if Seller fails to comply with any provision of this paragraph, then Purchaser may: (i) utilize the remedies set forth in Paragraph 15; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**G. WOOD INFESTATION:** Prior to settlement, Seller shall furnish Purchaser with an inspection report from a Virginia licensed termite control company concerning the presence of, or damage from, termites or other wood destroying insects. If the inspection reveals active infestation or damage caused by wood destroying insects, whether past or present, to the (i) primary dwelling, (ii) any other dwelling(s) on the Property with a valid certificate of occupancy, and (iii) the following additional structures _____, Seller shall have the affected area treated and have the damage repaired by a reputable company. The treatment company shall furnish a one-year warranty on such treatment. Subject to the limitation imposed by Paragraph H below, if Seller fails to comply with any provision of this paragraph, Purchaser may: (i) utilize the remedies set forth in Paragraph 15; (ii) accept the Property in its current condition; or (iii) terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**\*H. LIMITATION:** If the total costs of fulfilling Seller's repair or treatment obligations set forth in Paragraphs F and G above exceeds $_____ ("Repair Limit"), then Seller shall have the option to: (i) fulfill Seller's obligations set forth herein; or (ii) pay or credit the Repair Limit to Purchaser and refuse to pay any excess of the Repair Limit. If Seller elects option (ii), Purchaser shall have the right to either accept the Property in its present condition (in which case the Seller shall pay or credit the Repair Limit to Purchaser at settlement), or to terminate this Agreement by written notice to Seller, and subject to the provisions of Paragraph 6, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. If no Repair Limit is entered in this paragraph, the parties agree that the amount shall be $1,000.00. The Repair Limit is independent of any obligations agreed to by Seller pursuant to Paragraph 14 or any inspection/repair addendum.

**I. VA/FHA Loans:** It is expressly agreed that notwithstanding any other provisions of this Agreement, the Purchaser shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a director endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. The Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

**J. NONBINDING MEDIATION:** Unless waived by mutual agreement of the parties, any disputes or claims arising out of this Agreement (except matters involving mechanics liens or licensing) shall be submitted to mediation prior to instituting arbitration or litigation. The cost of mediation will be shared equally between Purchaser and Seller. The mediation shall be non-binding, unless a satisfactory settlement has been reached. Thus, if no settlement is reached, the parties are not bound by the mediation and may pursue any course of action. If a settlement is reached, it shall be binding upon the parties. The mediation shall be provided by a mutually agreeable mediator. Judicial actions to provide provisional remedies, such as an injunction or a lis pendens, shall not be prohibited by the agreement to mediate, nor shall it waive a party's right to mediate.

**K. MISCELLANEOUS:** This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this Agreement, a "day" shall mean a calendar day unless otherwise noted. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery of any notice from the other party in order to hinder or delay any deadline established in this Agreement. UNLESS OTHERWISE PROVIDED HEREIN, THE PROVISIONS OF THIS AGREEMENT AFFECTING TITLE SHALL BE DEEMED MERGED INTO THE DEED DELIVERED AT SETTLEMENT AND SHALL NOT SURVIVE SETTLEMENT.

**23. SELLER REPRESENTATION:** Seller warrants that the person(s) signing this Agreement as "Seller" include(s) every person who possesses an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

CVRMLS Form 8298 LtrRev. 6/12                    Page 7 of 8

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.

Instanet forms

Authentisign ID: ...
Authentisign ID: ...

**\*24. ELECTRONIC SIGNATURES.** *AB* *HH* If this paragraph is initialed by both parties, then in accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign, regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Agreement. The parties hereby agree that either party may sign electronically by utilizing an electronic signature service.

**\*25. ACCEPTANCE:** Unless both Seller and Purchaser accept this offer in writing by <u>5 O'Clock</u> ☐ a.m. or ☒ p.m. on <u>01/30/15</u>, this offer shall expire. Purchaser and Seller understand that they shall have the right to withdraw any offer at any time prior to receipt of a fully executed Agreement by all parties. If either party withdraws an offer, notice may be given in person, by telephone or electronic transmission, or by U.S. mail sent to the other party or such party's real estate licensee, and shall be deemed effective upon hand delivery, upon transmittal by electronic transmission or upon deposit in a mailbox. Should any offer be withdrawn, all Deposits shall be returned to the Purchaser at no penalty.

WITNESS the following authorized signatures:

| | | | |
|---|---|---|---|
| Authentisign | | Authentisign | 01/29/2015 |
| _signature_ **1/29/2015** | | _Hallmark Home Builders, Inc._ | |
| Purchaser 1/29/2015 12:02:11 PM      Date | | Seller 1/29/2015 10:31:17 PM      Date | |
| | | | |
| Purchaser      Date | | Seller      Date | |
| | | | |
| Purchaser      Date | | Seller      Date | |

*The following is for informational purposes only:*

| **Selling Company's Name and address** | **Listing Company's Name and Address** |
|---|---|
| <u>Base Camp Realty of Richmond</u> | <u>Long & Foster REALTORS</u> |
| <u>6645 Lake Harbour Dr</u> | <u>8804 Patterson Ave.</u> |
| <u>Midlothian      VA      23112</u> | <u>Richmond      VA      23229</u> |
| Office Phone <u>804-639-9001</u> | Office Phone <u>804-740-3000</u> |
| Office Fax <u>(804)639-6670</u> | Office Fax <u>(804)741-5733</u> |
| Purchaser's Salesperson Information: | Seller's Salesperson Information: |
| Name <u>John O'Reilly</u> | Name <u>Eleanor V Towers</u> |
| Email <u>johnoreilly@basecamprealty.com</u> | Email <u>towersev@yahoo.com</u> |

COPYRIGHT©2012 by the Central Virginia Regional MLS, LLC (CVRMLS). All rights reserved. This form may be used only by members in good standing of the CVRMLS. The reproduction of this form, in whole or in part, or the use of the names "Central Virginia Regional MLS" or "CVRMLS", in connection with any other form, is prohibited without prior written consent of CVRMLS.

CVRMLS Form 8298 LtrRev. 6/12      Page 8 of 8

This form was produced by John O'Reilly. CVR MLS forms may be used only by members in good standing of the Central Virginia Regional MLS.



UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re: **HALLMARK HOME BUILDERS, INC.,**                    No.  14-34137 KLP
                                  **Debtor.**                    Chapter 11

## ORDER

This matter is before the Court on the *Debtor's Sixth Motion for Order Approving Private Sale of Real Property* (the "Motion").  Upon further consideration,

**IT IS ORDERED** that the Motion is GRANTED;

**IT IS ORDERED** that the *Purchase Agreement* by and between the Debtor (as seller) and Adrienne Bowman (purchaser), dated January 29, 2015, for property commonly known as 10000 Shifflett Court, Glen Allen, Virginia, and more particularly described as

> ALL that certain lot, piece or parcel of land, with all improvements thereon and appurtenances thereto belonging, lying and being in Fairfield District, Henrico County, Virginia, designated as Lot 38, Block B, Lee's Crossing all as more particularly shown on plat made by J. K. Timmons & Associates, P.C., dated June 21, 1994, recorded October 20, 1994, in the Clerk's Office, Circuit Court, Henrico County, Virginia in Plat Book 99, page 92, reference to which plat is hereby made for a more particular description of the property.
>
> IT BEING the same real estate conveyed to Hallmark Home Builders, Inc., a Virginia corporation by deed from Joshua A. Wharton and Amanda D. Wharton fka Amanda L. D'Arville, husband and wife, dated May 5, 2010, recorded May 7, 2010 in the Clerk's Office, Circuit Court, Henrico County, Virginia in Deed Book 4762, page 713.
>
> ADDRESS: 10000 Shifflett Court
> Glen Allen, VA 23059
>
> GPIN No. 783-766-1117 = Lot 38, Block B of Lee's Crossing

is APPROVED;

**EXHIBIT B**

**IT IS ORDERED** that the sale of the aforementioned property shall be free and clear of all liens, claims, encumbrances, with county taxes to be paid at closing, and remaining liens, claims, encumbrances, and interests to attach to sale proceeds; and

**IT IS ORDERED** that real estate broker commissiond in the total amount of six percent (6%) of the sale price of the aforementioned property shall be and hereby is APPROVED;

**IT IS ORDERED** that the Debtor is authorized to pay real estate broker commissions and expenses at closing from sale proceeds; and

**IT IS ORDERED** that the fourteen (14) day stay under Federal Bankruptcy of Bankruptcy Procedure 6004(h) is waived so that the Debtor may proceed immediately to closing.


DATE: _____        _____

                                 UNITED STATES BANKRUPTCY COURT

                                 ENTERED ON DOCKET:


For this I ask:

/s/ John C. Smith_____
Roy M. Terry, Jr., VSB No. 17764
John C. Smith, VSB No. 44556
Elizabeth L. Gunn, VSB No. 71044
SANDS ANDERSON PC
PO Box 1998
Richmond, VA 23218-1998
Telephone: 804.648.1636
Counsel for Hallmark Home Builders, Inc.


## LOCAL BANKRUPTCY RULE 9022-1(C)(2) CERTIFICATION

I hereby certify that on February 2, 2015, a true copy of the foregoing proposed Order was served on all necessary parties by electronic means and/or mailed first class mail, postage fully prepaid.

                                 /s/ John C. Smith_____

**PARTIES TO RECEIVE COPIES:**

Thomas R. Towers, Jr.
Hallmark Home Builders, Inc.
24 Highland Rd.
Richmond, VA 23229
Debtor

John C. Smith, Esquire
SANDS ANDERSON PC
PO Box 1998
Richmond, VA 23218-1998
Counsel for Debtor

Jonathan Hauser, Esquire
Troutman Sanders LLP
PO Box 61185
Virginia Beach, VA 23466-1185
Counsel for First Union Market Bank